Steve Sadie for Mr. Reynolds. This case involves claims of ineffective assistance of counsel representing a 14-year-old charged with murder. Juvenile state counsel did not litigate a motion to suppress statements. Adult counsel did not provide adequate assistance regarding the entry of a plea negotiation. To start out with the suppression of a statement, the basic claim goes to whether there existed at the time of the filing a basis for suppression. That was the claim that was made in state court. That was the claim that was litigated there in terms of voluntariness. The state court entered a finding saying there was no proper basis for objection. I believe that based on the totality of the circumstances in this case, on the contrary, there was not only very strong basis for the filing of such a motion, such a motion should have been filed and would have prevailed. The reason goes to the basic question of what type of protection do we need when you're talking about a 14-year-old faced with officers who have years and years of experience in interrogation. What we have from the record in this case is a very sophisticated retype interrogation. This is what distinguishes the case from Derrick, the case that was dealt with both in state court and before the district court as, well, this is not a case involving police overreaching. On the contrary, this is a case exactly involving police overreaching. The record is right with demonstrations of how the police used sophisticated techniques in order to obtain the statement. Why would a sophisticated technique be equated with coercion or involuntariness? Let's assume there is some sophistication. Why is that controlling? The basic question is whether the will is overborne. What the teachings from Miranda, from pre-Miranda voluntariness cases is that subtle psychological techniques can be used to overbear the will. In this case, we have a 14-year-old. We have somebody who is especially susceptible to having their will overborne by more sophisticated folks. It seems like right from the get-go, he wanted to tell his story, and he mistakenly perhaps thought that because he wasn't the wielder of the knife, that he had no problem. Am I missing something? That's the impression that I got from the record. So why does that support that sophisticated techniques would render this coercive? Because the way the conversation was started, and a key part of the interrogation techniques using these types of subtle techniques, is to develop rapport, as the officers said. We are developing rapport here with him. What they do is they confront him with the statements of the two girls, and then say, well, they're kind of biased. Can you solve this problem for us? Which one of them was the perpetrator of the crime? So he's answering it. Let's say they did that. Why does that make it coercive? When you make your oral argument, you're a good advocate with a lot of experience. You'll try to develop rapport with the panel, most likely. So does that make your argument coercive? It means that if, instead of sophisticated judges who have heard and seen every type of advocacy conceivable, you are a 14-year-old who's never faced more than a misdemeanor prosecution, that yes, having me try to get a statement from a 14-year-old, if I am not giving them complete protection, especially when there's a statute saying, call this person's parents before you talk to them. Yes, that's overreaching. That's using my sophistication to take unfair advantage to get a statement that I would not otherwise be getting. So do the police have to get 14-year-old interrogators? No, but they do need to be more... So you'd say there should be a per se rule, they have to have the parent there? No. Okay, then what exactly do they have to do to satisfy your concern about a 14-year-old confronted with sophisticated techniques? From the dawn of litigation regarding voluntariness of statements, it depends on the totality of the circumstances in the individual case. So rather than trying to tell the court that I want to have this type of prophylactic rule, I'm not doing that. I am saying that on the totality of the circumstances of this case, when they are saying they have a statute that was requiring them to contact the parents, where they are intentionally developing rapport in order to induce him to make that first statement, where they are misleading him about the purposes of the interrogation, and where they are intentionally not using the recording device because we think it will make him talk more likely. This is using the guiles that police interrogators have developed over the years, and this is... The Reid technique goes back to the footnotes in Miranda. You can just see it played out in this case. They are using very sophisticated techniques against a 14-year-old who is only requiring a misdemeanor. It's just overbearing his will. Are you asking for an even playing field between the investigators and the suspect? Yes, and that's not what happened here. I think that an even playing field in the context of a 14-year-old is not an unreasonable thing to ask for. Except it's not a play. It's not a game. It's a criminal investigation. It's deadly serious, and that is exactly the reason why allowing officers to play this type of sophisticated game to try to overbear the will of the person to get them to talk when they know that it's against their interest to talk. But if he wanted to talk... This is just what's bothering me, and then I'll be quiet and listen to your argument. If he wanted to talk from the outset, which the record seems to support, that he wanted to tell his story because he thought it was exculpatory, then how are they overbearing his will by using sophisticated techniques like developing rapport? And could they do the interrogation without developing rapport? First, would it have been okay then? You're saying you don't want to say because it's I think under these circumstances, the facts indicate that these sophisticated techniques were used before any statement was made and helped to mislead him into thinking that he's resolving this problem between the two girls accusing each other of having done the knife work. And, in fact, that happens before anything else goes on. And they're making the decision about not calling the parents and about not recording. All that happens before. So this is right from the outset before he talks. And I'd remind the court that in Gallegos, the Supreme Court case involving the 14-year-old where it was suppressed even though there was advice, that they comment about how his story came spilling out from the start. That was still under the circumstance of that case. You still have to look at the totality, and it's not sufficient that just because he thought that he wanted to talk, he was providing information because it's in the context of him being led to think that he is solving a different problem. And they say throughout. It was obvious he didn't know that he was hurting himself even by admitting to his intent to rob even though he was not saying he intended to kill. That fact was of great assistance to the government. Before he made any statement relating to himself, he was given his Miranda rights, correct? They had some opening patter with him pre-Miranda rights. But then before they asked him about his involvement, they gave his Miranda rights? As I understand the record, the opening patter before they did the Miranda rights was confronting him with the evidence that they had received from the other two girls, which is two interrogation techniques. I'm not saying it's not a technique, but I think before they asked him about his role, they gave him his Miranda rights. That's what the record reflects, Your Honor. And that's why we're talking about voluntariness, right? So your position is that the fact that they used sophisticated techniques plus his age, plus they didn't call his parents, those lead to a conclusion that it's involuntary. Yes. Well, it certainly shows that the state court finding that there was no proper basis for objection is terribly wrong. And I would also contend that not only is it wrong, but yes, if such a motion had been filed on this record with a 14-year-old and the Supreme Court case law that we have, especially after Roper, that he would have prevailed on that and that that was very important, both for the admissibility of the waiver hearing, the strength of the prosecutorial case for the purposes of waiver, and, of course, for plea negotiations. So that had a huge negative effect. Why does it matter if the juvenile court counsel moves to suppress or not if in the adult proceeding there could have been a motion to suppress? Is that true that there could have been in that proceeding? Yes. Okay. So then why does it matter that they didn't move to suppress earlier? Because of the effect on the waiver decision. One of the critical questions of waiver under Oregon law is the strength of the prosecutive case, which would end, of course, also the use of it at all, which was used throughout the waiver proceeding, and the ability to use that in plea negotiations. If I could move to the fail to properly advise, and in this situation we have the deposition testimony of the young man. Remember that he's about 19 at this point, so he's been in custody for years. He says that the plea was giving him more time than I should have got under the guidelines at 181, page 19, and it had an additional 80 months on top of the 120, which the sentencing gridlock said was my maximum time, 181, page 20. The affidavit of counsel in this case is extraordinary because it says not a word about plea negotiations and advice regarding the advantages or disadvantages of a plea. Instead, it talks about trial prep and basically spent his whole time preparing for trial and not a syllable about preparing for what matters in a case like this. And then we also have the testimony during the trial at 219 where he says that the counsel provided no investigation of facts and case law regarding the plea offer. In the state findings of fact, the court starts out saying that they discussed the matter between counsel. There's not a word that supports that. And the district court also was saying, I'm looking at this, I hear what the judge is saying, but I'm very concerned because it doesn't really say that there was conversations about the plea negotiation and, in fact, there wasn't according to the undisputed testimony during the post-conviction trial. They also relied very strongly on a very interesting part of it, and that is that they say that because he said he wanted to plead guilty, that that meant that, well, he was going to plead guilty anyway, so who cares what kind of workup was done on the plea negotiation. And that is just completely wrongheaded under controlling federal law, even if the situation where you have somebody facing death penalty, and they say, don't do any mitigation work, this court says, no, you've got to investigate to make an informed decision about whether that's a step that is in the person's interest, especially when you're dealing with a 14-year-old. So using the fact that he wants to plead to say that, well, it doesn't matter what he pleads to. Well, to be fair, the reason he wanted to plead was to avoid a life sentence. No, absolutely not. I don't think that that appears in the record, and they certainly didn't say that. He was not charged with aggravated murder, and our position that I think we've had throughout is that there was no basis for such a charge, especially given the only statements are about, I intended, and the statements during the plea colloquy are only, I intended to commit a robbery. I didn't intend to kill anybody. And that's throughout the recordings. I thought that there was testimony that he gave a signal to the girl who had the knife to slit the man's throat. Yes, there was. And he mouthed the words. Yes. So you're saying that where does the testimony come from, that I just intended to do a robbery and then somehow in the middle of it he changed his mind? No, that the stabbing was to be in the course of a robbery. It was not intended to kill, which was what she did, and that's why he responded in surprise to that. That was both in the recorded statement as well as in the colloquy at the time of the entry of the plea. He clarified that, no, I was intending to rob and not to kill. So he wanted the victim's throat cut, but he didn't intend that that would kill the victim? That's correct. He did not say throat cut, he said, but he knew that she had a knife in the back. But he also gave a signal. That they were going to do the robbery. That they were going to do the robbery. But he also gave a signal like. No, of course gesturing across his throat, there's nothing. As a matter of fact, I think the testimony in the record is confused about pointing at the back of a knife or something like that. I thought that there was something that he had done that, but also that he mouthed the words cut her throat? No, I think that it was now or something like that, indicating the time to act. With the knife. That is a fair inference. And wasn't there some discussion before they got in the car with the man? Before the man was recruited? The victim was identified first by Stacy, because they were saying that we want to go and rob a troll. They thought this man would have money on him. Which he did have $400, marijuana, methamphetamine and alcohol. So with that, in that discussion, was there testimony that. That the appellant said something about cutting the man's throat or that one of the girls did. I do not believe there is that explicit a conversation about that. I think that there was. He said, I won't shank her. I won't shank him. I won't wield the knife myself. And that Jennifer said that she would wield the knife. I think that that's the conversation. I could be wrong, but I was under the impression that there was discussion about cutting the man's throat at that time. My review of the of the record over the weekend is not recalling. I do remember there was definitely conversation about about the knife and that he was saying I wouldn't shank him. And that she was indicating that she would. Let me get you back to an earlier issue. Yes. There's some law about when a guilty plea is made that antecedent issues can't be raised. So if the guilty plea can be challenged on the ineffective assistance ground, the advice for it, you've got that issue. But does the guilty plea itself get rid of the issue of the earlier motion to suppress? No, Your Honor. First of all, the prejudice occurred at the waiver hearing because he did not have the it was used in his to his detriment. It was used to establish that there was prosecutorial merit to the case. And it was and it hurt his ability to plea negotiate. So the damage occurred in the juvenile court context. So, no, I don't believe there is a waiver. And I think the court is correct as far as the guilty plea doesn't waive anything where there's ineffective assistance of counsel. That's the clear history of the trilogy of cases that start the whole question of voluntariness. I understand I have a little time left that I'd like to reserve for rebuttal unless the court has other questions. Thank you. A couple minutes for rebuttal. May it please the court. Ryan Kahn appearing for the state or Mr. Bellick in this case. I would ask that the court in review, I noticed a number of times during Mr. Sadie's argument that there were some things, some arguments that he made that in the in the red brief I've explained were issues that were not preserved, were not subsumed within the claim. And I intend to point those out when possible. But at the beginning, I would just like to ask the court to pay particular attention to the to those arguments in the red brief when the court does get to that. I'm going to start with the ineffective assistance of juvenile counsel and specifically the waiver issue. Judge Gould, I believe it was that you just asked the question about. The state's position is that under Lambert versus Blodgett, and that's the most recent case. And I think it's it's pretty much practically indistinguishable on as far as what the claim was. The petitioner was just like in this case, claiming that his attorney in the juvenile proceeding, the waiver proceeding provided ineffective assistance of counsel. And this court implicitly acknowledged what the district court held in that case, which was that that essentially the petitioner waived that by subsequently pleading guilty in the adult proceeding. And given that Lambert is essentially right on point, that should dispose of the issue. Mr. Sadie is correct that there is an exception for ineffective assistance of counsel claims. But the court has said that that the ineffective assistance of counsel claim only gets around the waiver issue. If it renders the plea involuntary or unknowing, Mr. Sadie's argument is one of a but for causation. His argument is, well, if my attorney, my attorney wouldn't have performed inadequately, I wouldn't have been an adult court to plead guilty. And a but for causation is not sufficient to establish to establish ineffective assistance of counsel. With respect to this type of claim, and in fact, if the but for causation was sufficient, then the whole Brady trilogy wouldn't have been decided because in each of those cases, there was a procedural defect that occurred earlier, which was which was a defect. And then subsequently there was a guilty plea. And there's always going to be a but for connection for the ineffective assistance claim. It has to, the petition has to show that his juvenile, his juvenile counsel's representation rendered his plea involuntary or unknowing. And Mr. Sadie has not argued that in this case. Moving on to, I've also presented a number of alternative basis, basis for affirmance. The next one being that petitioner's juvenile counsel, I think the record pretty clearly shows that he made a strategic decision not to challenge the admissibility of the petitioner's confession in the juvenile, in the juvenile waiver proceeding, likely because, and in fact, I think the record bears this out because he knew it could be challenged in the subsequent adult proceeding. If it ever came to that, he, the record shows that he used pieces of the petitioner's confession to his advantage, to argue to the juvenile court that the court should not be waiving the juvenile, but that he contemplated and there's evidence in the record to show that he knew that if the case eventually did reach adult court, that the attorney there would move to suppress the statement. And the juvenile attorney contemplated that that would be a legitimate basis for suppression. Just a couple or more quick points to make on this issue. This whole thing is an AEDPA case, isn't it? That's correct. So on this issue of the voluntariness of the plea, we have to look at what the Supreme Court precedent tells us. That's right. On the total circumstance. That's right, Your Honor. Well, actually, the totality of the circumstances, that was the next thing that I wanted to address, because that's one place where petitioner's argument on appeal parts ways with the argument that he made in the district court. In the district court, his argument was, he may have talked about the totality of the circumstances. He may have stated that standard in his briefing. I'm not exactly sure. But the crux of his argument was because of the petitioner's age, because he was a juvenile, he was required to have his parents with him. That was the sole basis upon which he suggested that his attorney should have moved to suppress his confession. That's on the motion to suppress. That's correct. That was his entire basis in the district court for arguing that his counsel was ineffective. And so the court, and actually I think that was the same in the state courts, in the state post-conviction court as well. That was the basis for the claim that I have to have my parents with me. The court rejected that claim, and the state court's decision on that basis was not contrary to or an unreasonable application of Supreme Court precedent, and in fact not even an unreasonable application of this court's precedent under the Derrick case, which is the case where this court clearly stated that there's no constitutional, no Supreme Court requirement that a parent be present to render a juvenile's confession voluntary. Now on appeal, Mr. Sadie has talked about a lot of other situations, most notably I think is what he calls the sophisticated misdirection, and some other issues that would ordinarily come into, I guess, the totality of the circumstances. And those issues simply are not preserved and were not presented ever to the state, post-conviction court, and the state's position is that this court shouldn't address those bases for establishing that his counsel should have moved to suppress the evidence. On the issue of whether a guilty plea in the adult proceeding, if voluntary, waives the antecedent issues, has the Supreme Court talked about that issue, or is that just Lambert? Is that a, I think you mentioned Lambert. Yeah, Lambert v. Blodgett was, that is a case out of this circuit. It was interpreting, or it in turn cites, the Tollett case, which is a U.S. Supreme Court case, and is cited in the red brief. And I don't know that the Supreme Court has ever addressed the particular situation at issue here, where a juvenile was waived into adult court. But definitely the Brady Trilogy is the case where the doctrine sort of emerged, and then in Tollett I think it's succinctly stated. And essentially the theory is that if someone has come to the decision where they want to plead guilty and they're guilty pleas knowing involuntarily entered, that that constitutes a break in the chain of causation between any antecedent, illegality, or defect. And it's essentially based on the theory, I think, that the law wants to allow people to take responsibility for their actions at some point and to enter into a guilty plea. And that although there is an exception for the inadequate assistance of counsel, it has to bear directly on the guilty plea itself, or else it's no different. Was that recommended to the district court? It wasn't, and that's actually another issue that I wanted to address. Because Mr. Sadie has argued that it's a defense that needed to have been raised by the state in the district court. And the state's position is that it's not a defense in the manner of like a statute of limitations or a procedural default defense, but it's more an alternative basis for affirmance, which this court The totality of the circumstance is waived because he only argued parents. Oh, I'm sorry. I think we're sort of crossing ways. You're saying it's interesting. You're arguing that because what you didn't raise, we can overlook, but what he didn't raise precisely, we can't overlook. That's true, and I think that that's the way that it works, I think, is that It's the way the cookie crumbles, no? Exactly, because He wins and the juvenile loses. No, I think the theory is that the court can affirm on any basis that the record supports because they're affirming they'd be upholding what the district court held. Preservation is sort of the other side of that coin, and that is the theory behind that, is it's essentially unfair to the district court to reverse on a basis that was never presented to it. So my understanding is that preservation applies pretty strictly to appellants, but that respondents can proffer alternative basis for affirmance that don't necessarily need to be presented to the court. And I wanted to sort of point that out, that the waiver issue that the state raises is not in the manner of a defense, because the state is not claiming that his habeas corpus claim itself was waived, that he waived his claim, but rather that he failed to meet the burden to carry his claim because in the previous proceeding he essentially executed this waiver. Let me be sure I understand how it played out. In this case, I wasn't quite following the argument at the beginning on this juvenile ineffective assistance. You said he didn't argue the fundamentals to avoid this doctrine. Is that correct? In the district court, that is that the juvenile counsel committed such ineffective assistance that it rendered his guilty plea in the adult proceeding involuntary. Right. That argument wasn't made in this collateral proceeding at the district court. That's correct. So that would have, if he had made it, avoided the doctrine you're now invoking. Is that correct? Well, I think he would still have to, the evidence would still have to prove that point. Well, that's true, but basically you're not raising it in the district court. You didn't sharpen the focus so that he could have then put in or modified his argument to avoid the argument that you're now making we should invoke on appeal. Well, Your Honor, the I'm just, is that correct? I'm just trying to understand the lay of the land here. Well, it's, I guess what I'm referring to more is he had an opportunity in his reply brief to make the claim, to make the assertion that this, that the juvenile attorney's representation somehow rendered his guilty plea involuntary or unknowingly. And in, I believe even in the reply brief, the only claim of prejudice that he has is I wouldn't have been there. It's, he's not talking, he has never talked about specifically the plea itself. And I think also conclusively I don't think he could meet that burden and the evidence could not be read to see that that burden has been met given the fact that he did have the opportunity to move to suppress the evidence in the adult proceeding. He didn't do it. And he has not claimed and has never claimed that his adult attorney should have moved to suppress it. His argument has been, however, that because the motion to suppress wasn't made below, his bargaining position was essentially substantially weakened and put the state in a much better position. So to that extent, whether that bleeds into involuntariness or not, I'm not sure, but. Yeah, he has made that argument. I think that it, it's surely speculative in the sense that he has no evidence in the record and there is no evidence in the record to suggest that the DA would have off, would have given any other offer than what, than what was contemplated. Technically is the issue for us because he's a state prisoner and the AEDPA applies, whether the state courts rejection of involuntariness at the guilty plea stage is an unreasonable application of, contrary to or an unreasonable application of some Supreme Court precedent. That's correct. And that's, I think, an important point, because moving on to the issue of whether the motion to suppress would have been meritorious, the state's position is that it wouldn't have been. Mr. Sadie's position is that it would have been. But even if this court thinks that it would have been meritorious, if reasonable jurists could disagree about that point, then I think the state court did not unreasonably apply Supreme Court precedent and petitioner would fail to meet his burden on that, on that basis as well. Your time is running. It's late. So is there anything that you haven't covered in your briefs that you're dying to put before us? If I could have just a second, Your Honor, just to double check. Please. I did want to briefly just mention the fact that if the court, you know, does get to the totality of the circumstances issue, there simply is no evidence in the record to show that there was any sort of coercion by these police officers. Okay. Then I have nothing further. Thank you. Three points, Your Honor. On Lambert, I think we've distinguished that in the reply brief that most significantly there was a state law on the waiver that there's been no articulation of any Oregon similar provision as in Lambert and that in fact we have established prejudice in that case. Second, on the strategic decision assertion that the government just made, the fact that there has to be repair once a mistake is made under Kimmelman, again, in 9 to 10 of the reply brief we addressed that, is that it's not excused in effect of the system of counsel. I think we actually know the reason for what happened. Remember that the counsel said I was filing a motion because he was intoxicated at the time, realized he had made a mistake, and it was because of the mistake that he didn't keep thinking about suppressing on the other grounds that were available. Lastly, under both 2254 sub 1 and sub 2, not only have we established that there is unreasonable applications of the Supreme Court authority, we've also established clear and convincing factual error by the state court. What's the Supreme Court case or cases that you contend this is an unreasonable application of? Number one is the Kimmelman v. Morrison on the first one, Brady, and the other ones on effective assistance of counsel on guilty plea. And I think that's actually a very important point because it shows that there has been longstanding Supreme Court authority in this area that the state courts failed to properly apply. Okay. Thank you. Thank you, counsel, for your bearing with our long challenger. And we'll stand and recess until tomorrow.
judges: Fisher, Gould, Bea